Good morning, Your Honors. Tanya Whiteleather representing Isaac Santee, who is the appellant in this matter, who was the plaintiff in the underlying district court matter, and who was the petitioner in the underlying administrative due process matter brought pursuant to the Individuals with Disabilities Education Act. I would like to start off by discussing the notice of related cases that was filed by appellee regarding Arlington v. Murphy. In fact, it is appellant's position that Arlington v. Murphy is not a related case because that case specifically addresses expert witness fees. At issue in this matter is not witness fees for any particular proceeding. What is at issue here are costs incurred by an attorney and costs as a part of the attorney's fees for prevailing party. We believe that Arlington v. Murphy is not related in any way to this matter, and that is why we did not file notice of that with the Court. Also in this matter, it's very important, I believe, to note that unauthorized practice of law is not an issue. Unfortunately, in the district court, the judge raised that repeatedly and used that as a basis in part for his determination regarding fees. Well, do we have precedent saying, though, that a lay person who represents perfectly legally somebody in one of these hearings isn't entitled to an award of fees for that service? I'm not talking fees. I think we're talking apples and oranges. We don't have a situation where a lay person, as in the Ahrens case and a number of other cases cited by appellee, was representing the student. In fact, I was representing the student as the attorney. And as the attorney, I hired individuals, staff, copy services, service agents, to affect and do certain things for me in the prosecution of the case. One of those individuals was an advocate who, under California Education Code 56505, is allowed to accompany, assist although the word represent is not used in the Education Code, but allowed to represent, under the policy and practices in the State of California Administrative Due Process Hearing, individuals at due process hearings. That is not normally my practice, as the trial evidence showed, but because we were backed into a corner, because this was an expedited hearing with a sole issue, overriding issue being whether or not the child should be returned to his educational placement instead of removed for a disciplinary action. And because the State of California Administrative Hearing Office would not continue this, would not allow my client in this matter, administrative matter, to have representation of counsel, I had no recourse. And I think you're saying that it's an interesting argument, but I'm not sure that it's quite right. Take Shapiro, for example, where you have the parents are the attorneys. And I was sympathetic to that case, but we held under the controlling law that no fees were available to the parents who were using their legal skills to represent their child. Here you have a staff person who is performing your functions under the circumstances. Why is it any different? Because that person is doing so under my direction. If we were talking about an attorney service who was performing services as an independent contractor, the Court would have any trouble, I believe, in awarding those costs as part of the attorney's fees. If I were hiring a clerk to sit by me at hearing, as I have done many times, to sit and take notes and assist me at hearing, I don't believe this Court would have any trouble awarding that cost as part of the attorney's fees, reasonable attorney's fees. And because the individual, the advocate, is permitted under California education law to accompany and assist and to represent an individual at hearing, when she did so under my explicit direction, although I was not in the room with her, she did so at my direction, I prepared her, I directed her, was in constant communication at the time I was trying to conduct another hearing. She was under my supervision. And I think that the position of appellees, that under supervision, work product requires that she be under my immediate supervision, is not supported by any authority whatsoever. If that were so, the other costs that an attorney is entitled to have reimbursed for reasonable attorney's fees, that a party would be entitled to, would not be allowed as well, because I do not supervise service of a process. I'm not there standing over the agent. I do not supervise or stand in the room each time my secretary or clerk is doing work. I give them general direction, they perform the service. My big concern regarding the unauthorized practice of law claim in this is that it's California Education Code. Some states do not allow individuals who are not attorneys to represent a due process. That is not California. California authorizes that and it is standard and common practice with the administrative due process hearings. The court referred several times in the trial, made references to Congress's intention, that Congress did not intend advocates to ask questions at hearing, and again, that is not the state of the law, it is not California law. That was the part of the reason, I believe, behind the judge's determination. The judge also found a trial based upon the attorney fee bill that was provided. It was clear error in his finding of the facts. The indication the fee bill provided indicated preparation advocate for due process. And the court indicated that it apparently did not read preparation. Apparently read only advocate due process because in the decision the court found that I did not advocate for the student on those dates. There was no evidence ever presented that in fact I had been actively advocating for the student, but I had prepared the advocate, as the record duly noted, several times and spent many hours doing so, preparing questions, tutoring the advocate, directing the advocate. There was no determination by the court at trial that the rates were not reasonable. What kind of a, was there a sort of a lodestar presentation on your part of what kind of your own fee would have amounted to if the district court hadn't capped it? There was. There was a presentation of the billing, which was also in exhibits. There was a presentation of the advocate's costs billed to my office. That was a total of over $10,000. But that was presented, yes, Your Honor. There was no determined How much of that was yours and how much was the advocate's? The advocate's was a little bit more than half that. My time was somewhat over four. And there was no determination that the time spent in this matter was unreasonable. Those issues were simply not decided against the appellants. No, I mean, it really comes down to whether or not the advocate can be, is treated as an attorney, which Arlington says is not compensable, and Shapiro would say, or whether it's a pure cost issue. Right? Absolutely. Absolutely. And that's a thorny question, I think. It is a very thorny question. And I see two sides of this. The first side being that the court can decide that a layperson attorney may never provide services for pay to an attorney who is of record in a matter. If that is the decision of this court, I see a real problem public policy problem, given a field where there are very few practitioners on this side of the table who represent students, and where parents are desperate for some assistance. Given the bar to any payment for anything, unless, first, you have a party who prevails, and number two, you show that the rates and services are reasonable, and number three, that the payment is reasonable, and number four, that there is a provision of attorney, I don't think that that would be an appropriate finding. I think that individuals who are advocates are allowed, both under Federal law and under California law, to work with an attorney and to charge, and their costs are part of attorney's fees. Does the record reflect how the payment was made to your advocate? Did you pay the advocate? I have a bill owed to her. I see. The parents have not paid the advocate directly. That is another issue that we have. The statement, the billing statement and the contract were brought into the trial, and my prior contract had parents, all the parents, or almost all the parents, my office works with, are indigent or very low income and do not have the monies to fund lawsuits. Their agreement, as is in the record, was that they would pay $1,500 as their total obligation and money obligation, and would agree to cooperate in the prosecution of any action for attorney's fees, should they prevail. The court found that the limitation on what the appellate should pay was the ceiling for the attorney's fees. I guess my question is a little different. I understand that's part of the argument, but there was no, the parents did not undertake a separate obligation to pay your advocate. They paid you the $1,500 or were to pay the $1,500, and then you were to pay the advocate out of that. Was that your arrangement, or was that even part of the record? It was exactly part of the record, and it's part of the agreement between my office and the parent. Also, with the understanding, when we first met with the parent, I introduced, just as I introduced my secretary and my office staff, I introduced the advocate to be working on the case, as I did in this case, and that was the agreement, that the advocate would be part of the fees. The fact, there was another finding by the court that any collection fees or charges related to attempting to obtain attorney's fees were not appropriately raised because they were not part of a due process hearing. To the contrary, 1415, 20 U.S.C. 1415, very clearly says that attorney's fees are appropriate in any action proceeding, or proceeding under 1415. 1415 is also the section that addresses attorney's fees, so that an action to proceed to attempt to collect attorney's fees would be an appropriate action for the award of attorney's fees. The use of the contract that we had entered into, the appellant and my office, that required them to pay $1,500 or $1,500 and then take further action upon prevailing, cannot be used as the basis for an award of attorney's fees. And I think there are a number of decisions we cited that are very, very clear as to that fact. And I think the record was very clear from the trial that the court found $1,500 was the total amount of fees based upon what the parents had to pay under the contract. We will leave that and return for rebuttal. Thank you. Good morning, Your Honor. I'm John Hayashida representing Charter Oak Unified School District. Before I get into the thrust of my comments, I'd just like to comment on some of the matters raised by counsel. With respect to the relationship between the lay advocate and the attorney, that was an independent contract entered into between the two persons. The record does not contain the contract itself. It was discussed at the trial, but it was never entered into evidence at the trial. At this point in time, I don't recall the exact details of it right now, so I don't recall what it says in terms of the parents' obligations with respect to the lay advocate. And I do not believe that the contract between counsel and the appellant addresses the parents' responsibilities if, in fact, the attorney hires an independent contract later on, what the parents' obligations to that would be. But that contract between the counsel and the parents are part of the record, so that can be reviewed. With respect to the award of the attorney's fees in the amount of $1,500, the Court did not base, did not necessarily base its findings of $1,500 based on the contract between the parents and the attorney. That was not part of the findings nor the decision of the Court. The Court based its decision based on the work performed by Ms. Whiteleather, the attorney, and the evidence at trial. It should be noted that the contract between the parents and the attorney can be used to determine what might be a reasonable fee, but it should not be necessarily the sole determination as to what the reasonable attorney's fees are in a particular case. But it can be looked at. Well, what in the order from the central district indicates that the district court went through a lodestar analysis at all? It didn't explicitly say that. I believe that the Court had no problems with the initial billing entry of $930. I think that was on April 26th, where Ms. Whiteleather did meet with the parents. But the Court did not go through a lodestar type of analysis as far as I could determine for determining it. No, I mean, basically it looks as though the Court relied on the $1,500 fee agreement, because the Court specifically references the fee agreement, paragraph two, notes what was charged, and then finds $1,500. I know. It is coincidental, and it could very well be that that was what was in the Court's mind. I think the evidence does support that on other grounds. I think the evidence, the, there was the meeting with the parents on April 26th, and then counsel did perform some services, such as writing the opening statement and maybe writing some questions and then working on the closing. The attorney spent approximately about $4,700 total in the case. The Court, however, has the authority to use its discretion to reduce that amount, and one of the basis for reducing the amount would be the degree of success in the case, in the underlying case. In this particular case, there were three issues, and the parents won on only one of the issues. And so I think, therefore, that the Court can take that $4,700, or that amount, and then reduce it by what it deems would be an appropriate amount that would reflect the services, the reasonable amount of services in this particular case. I suppose the biggest issue was the one that they won, that they, that the parents won. That is, but, you know, I was not there at the hearing, and I don't know how much time was devoted to that. And granted, I think that was probably the main thrust of why they filed the request for the due process hearing, but there were other issues in terms of whether or not the placement was appropriate, and whether or not a functional behavior analysis or assessment should have been conducted to, you know, to prepare the, or to find out what would be the right program for the child, prospectively. So I think those are equally important issues for the education of the child at that time. So to say that the discipline and the expulsion of the child was 90% of the case, I don't know. You can make an argument that the prospective education of the child based on the functional behavior analysis was also a very important thing, too. How do we know what the district court did? How do we know the district court did that at all? It's not contained in the order. It's not contained in the order. That is true. But I think the evidence does support that notion that, you know, there is substantial evidence that would justify the award of $1,500 based on the evidence and based on that type of analysis. And I don't think there's anything. In generalities, do you have a theory on why the number 1,500 was arrived at by the district court? No, I don't. It could very well be by the fact that I argued it. But I don't know. It's hard to say. Did you submit the findings of fact for the district court? Yes, I did, Your Honor. I did. Let me go on to the other issue with respect to the lay advocate and the reason why I cited the Arlington Central School District. The reason for the spareness of the district court order is really not the fault of the district court, in a sense. In a sense. So what did you mean by it when you submitted it, $1,500? What I meant by it was that, you know, that was a fact, that was part of the contract, and that was something that could be used to determine what might be a reasonable fee. Because, as I mentioned before, a contract with a retainer agreement can be used sometimes to determine what might be a reasonable fee for the services of an attorney. The bottom line, that was what your argument was, is that the contract amount, even though the testimony was it was discounted, should be the amount awarded in the case. But I don't think it should be based on that retainer agreement, as I, you know, discovered later through my research, is that that should not be the determinant factor in terms of what is the reasonable fee. It can be looked at, but it should not be the determinant factor. Well, here we are, we're fighting over a pretty small amount of money. Have you had any success in mediating this claim? No, we have not. And I gather from your response that the assistance of the circuit mediator is something you don't think would be helpful. I do not believe so. The collection attorney's efforts were, what, just disallowed as not part of the... Yes, because it was not incurred during a proceeding, a judicial proceeding. It was incurred after the decision had been rendered and before the filing in this matter. What about the time being spent today? Well, I suppose that that could be... I'm not sure, to be honest. You know, I suppose there could be an award to the prevailing party, because this is a judicial proceeding. Sure. So if you end up losing because of the spareness of the findings we sent it back for, well, true lodestar analysis, you may end up paying the fees for this. I know, and that is the difficulty of all of this, is because that the economics, the finances, you know, may get out of hand. But I think this case also raised the other very important issue, I think, of whether or not a lay person as an advocate can receive fees or costs in this particular case. I'm just concerned that, well, first of all, the attorney's fees under IDEA has now been lumped into the cost category under 28 U.S.C. 1920. It is now one of those costs that can be taxed. And the significance of Arlington seems to say that we need to look, those are the costs that are only allowed in IDEA cases, attorney's fees and those costs that are listed in Section 1920. And the problem now is that we have a lay advocate who is coming in and is now affiliating herself with an attorney, and under that affiliation is now able to recover her fees, her costs, even though these are not reasonable, these are not attorney's fees, nor are they one of the listed costs under the law. And this is one way of getting around that limitation as to what the federal law says. The federal law provides in terms of the recovery of costs, and that is the concern that I have, and why I think this case is important, is because what are we going to say in terms of what persons can recover costs in a case like this, and how far do we go out? Do we... Well, without departing too much from the record, is this a recurring issue in your district? This particular one is not, but I think it may have some significance, for example, in the use of paralegals and other people that may be used by attorneys, because they do use them, and ultimately they seek to recover fees by paralegals at the paralegals' hourly rates. In other words, those fees are not subsumed in the attorney's fees. They are billed separately, and they then seek them from school districts. And, you know, that's... And I'm sort of afraid that that's where we may be going, is to start to expand the costs that parents are permitted to recover, and I don't know where the outer boundary is right now. I would hope to think that when the law says that they can recover attorney's fees as costs, that that's exactly what it means. That they can get their attorney's fees, which subsumes all of the underlying costs they incur in their business, plus all of the related costs, such as witness fees that are allowed under federal law. So that's why I think this particular case has importance, because it might help to define those parameters and where we go from here. But in terms of the pure economics of it, if you had to pay the attorney for her fees, that she is able to hire a paralegal or an advocate for much less costs, in the end you're paying less money. In other words, there's an efficiency of using a lower paid personnel, and if the only cost recovery, or the only recovery can be for attorney's fees, then I think the economics may mean that the attorney does all of the work at a higher cost to you, ultimately, if the attorney prevails. That is true. That is a wise thing. What I'm concerned, though, is that the attorney may then become a hub, if you will, of a business where the attorney then hires a number of advocates and paralegals to do the work, you know, and then recover those people's work out there. And then what you now have is you effectively have the parents recovering the fees of those advocates, even though the law limits the fees to families. And yes, there may be some economic benefit in doing that, but the law says that only attorneys can collect fees and not advocates. And also we have to worry about the public policy of do we want to encourage lay persons who have unknown qualifications to represent families? And I think that may be another concern is that... That would have been the result, yes. I mean, it doesn't seem as though we have a hub problem or a... Not in this particular case, although, as evidence does show, is that the counsel does have, I think, retainers or standing agreements with six other advocates out there who work for her. But I'm saying that that could pose a problem, and that's something that I think maybe we should think about and consider how we're going to limit those boundaries. And I think that that is the importance of this particular case, and why I'm very concerned about it. And let me just... Anyway, so... I think if you have any further questions... Thank you, counsel. Let's see if I can catch all the highlights. Basically, having an advocate represent at an administrative due process hearing is not common for attorneys, and it's not something that is common for my office. It's not appropriate. It's not, however, illegal. It is not precluded either by State or Federal law. And anybody working under my office, we continue to contend, is a cost, just as it is for the bills that I have in my office. I have seen from Mr. Hayashida's office to his clients, any of the secretarial, any of the paralegal services are charged to his client. They have a right to pay, just as a plaintiff or an appellant does in this matter. But if you look at Arlington and Shapiro and the Thrust follows cases, it does limit fees in IDA cases. And I suppose, I think there's some force to his argument that if, not in your case, but in other cases in which we have a case where a plaintiff or an appellant, which may be out there, I'm not aware of them, you may have an advocate, this may be a disguised way of getting advocates paid for. And that may well be a good thing to have advocates reimbursed, but Supreme Court, I don't think, would countenance it. Missouri v. Jenkins, I think, is very clear Supreme Court law. And it addresses the use of paralegals, clerks, and the like, is the language. Yes, but this is slightly different, I think. I haven't come down one way or the other on it, but I think it's different. I understand. And I understand that I believe that all of the cases, the case that Missouri v. Jenkins was looking at, had to do with work done in office. However, we have a particular situation here where both state and federal law have authorized non-attorney laypersons to represent, to perform, in that they have the authority to attend. And as Mr. Hayashida represented, I do work with a number of advocates. They do the non-hearing normally, the non-hearing matters, saving districts money when we prevail. I think it's a very, it's a cost-saving is another thing that's analyzed. Are you talking about the negotiations as to the particular plan and so forth? IEPs, are you talking about IEP negotiations, that type of thing? IEPs, meetings, reviewing documents. Advocates are the people in this field who are the, and many of them are paralegals, who understand, who know, who are capable of filling in and doing the things that an attorney in special education would do without the high cost, and usually with a better reception from staff. If I walk in as an attorney, even though I'm a teacher, it's not quite the same as having somebody who is a layperson. So it's a very advantageous thing for parents to have the use of an advocate. And again, there is nothing in the law that precludes that, and there is nothing in my reading of any case law that precludes my payment of an advocate, paralegal, anybody who is working for me in the case. The, let me just make sure I've got all the points touched. I did want to point out the success of the case. The expedited case that was held, the major overriding purpose of the case, the only reason it was held as an expedited case was to put Isaac back in placement. He was removed for a behavior incident. We filed related to returning him, which was our goal, to his regular education placement in high school, was, were there a number of other reasons? What issues had they done procedures correctly, the manifestation, the termination? Should he be returned? We got everything we wanted. The decision in that matter gave us overwhelming success. He was returned. The district was told that they did need to do a manifestation determination differently. One of the issues was not decided at all. A second issue was decided, had to do with timelines for doing the manifestation determination. But it was substantial, overwhelming success because he was returned to his placement. So the appellants prevailed on that. There wasn't a – it's not one of those situations where I think there's much room for arguing that, that they did not.  The possibility, again, of looking at the issues raised and deciding whether or not an advocate, a non-attorney person, has the right to appear and represent a party at hearings, I believe the Court did very clearly in statements at trial. I don't think such a determination would be in keeping with State or Federal law. The Court could include or determine that attorney's fees do not include payment for advocates or for paralegals, anybody who is not the attorney of record in a case. And again, I don't see any authority for that, especially given Missouri v. Jenkins, which has very clearly support staff, although I agree that the advocate is a little bit different, but I think IDEA is a different set of laws. The Court could find, I think, that the appellant did not prevail at hearing. I don't think that would be within the evidence that was presented, because we did prevail substantially in that Isaac return. And the Court could find that the contract limits the amount of attorney's fees to which appellants were entitled. Again, I don't think that's supported by the law. It's our belief that the order of the Court for $1,500 in attorney's fees for a matter in which the parties substantially prevailed, to which I provided attorney's fees, to the advocate provided services which the parents are obligated to pay for by contract, would mean that the parents, the appellants herein, would be entitled to their full attorney's fees. Thank you. Thank you, counsel. And I gather that you think that getting the assistance of the circuit mediator at this point would be of little value. I'm sorry? I was asking you the same question I asked your co-counsel as to the possibility of mediation of this. I assume that you're past that point. We are certainly open. One of the policies in my office, we're always open to mediation, and I certainly am at this point. If appellees are, we're available. Okay. Thank you very much.
judges: Canby, Thomas, Conlon